UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LA UNIÓN DEL PUEBLO ENTERO, PROMISE ARIZONA, LYDIA CAMARILLO, and JUANITA VALDEZ-COX,

*Plaintiffs*,

v.

WILBUR L. ROSS, sued in his official capacity as U.S. Secretary of Commerce,

STEVEN DILLINGHAM, sued in his official capacity as Director of the U.S. Census Bureau,

U.S. DEPARTMENT OF COMMERCE, and

U.S. CENSUS BUREAU,

*Defendants*.

Civil Action No. 8:19-cv-02710-GJH

Hon. George J. Hazel

**INTRODUCTION**

Legislative defendants and third parties in *Common Cause v. Lewis*, No. 19 CVS 014001 (N.C. Super.) have asked the state court in that case to designate as "Highly Confidential/Outside Attorneys' Eyes Only" documents recovered from the storage devices of deceased Republican operative and demographer, Dr. Thomas Hofeller (the "Hofeller documents"). The legislative defendants have also asked that the Hofeller Documents be destroyed. The Hofeller Documents are relevant to Plaintiffs' claims in this case, and because the fate of these documents is uncertain, Plaintiffs would be irreparably harmed if the documents are destroyed before Plaintiffs can subpoena them.

Accordingly, Plaintiffs move *ex parte* under Federal Rule of Civil Procedure 26(d) for leave to conduct limited expedited discovery in the form of a subpoena on a third-party records custodian that has possession of the Hofeller documents to prevent destruction of evidence that is relevant to Plaintiffs' claims.

**BACKGROUND**

On July 11, 2019, President Trump issued Executive Order 13880, Collecting Information about Citizenship Status in Connection with the Decennial Census ("EO 13880"). Among other things, the Executive Order directs Secretary Ross to instruct the Census Bureau to create an inter-agency working group to collect citizenship data in connection with the 2020 decennial census for states to use in redistricting. On July 12, 2019, the Census Bureau published a notice dated July 3, 2019, stating that Secretary Ross had directed the Census Bureau to collect and produce Citizenship Voting Age Population ("CVAP") information prior to April 1, 2021 that states may use in redistricting.

On September 13, 2019, Plaintiffs filed this lawsuit, alleging that the President's order and Secretary Ross's directive that the Department of Commerce provide states with CVAP information for redistricting is motivated by a racially discriminatory scheme to reduce Latino political representation and increase the over-representation of non-Latino Whites, unlawfully advantaging White voters at Latino voters' expense.

Plaintiffs allege that EO 13880 and Secretary Ross's directive should be set aside because they violate the Administrative Procedure Act ("APA"), and that Defendants' actions should be enjoined because they are motivated by racial animus, are discriminatory toward Latinos and non-citizens, and are the result of a partisan conspiracy intended to dilute the representation of

non-citizens and Latinos, in violation of the equal protection guarantee of the Fifth Amendment of the U.S. Constitution, and 42 U.S.C. § 1985(3).

**The *Common Cause v. Lewis* Case**

Dr. Thomas Hofeller was a demographer for the Republican National Committee ("RNC") and a partisan operative involved in redistricting processes for decades.[1] Prior to his death in August 2018, Dr. Hofeller was a partner at Geographic Strategies LLC. Geographic Strategies was formed in 2011 and was jointly owned by Dr. Hofeller and Dalton Lamar Oldham, Esq. Geographic Strategies provides "legal and Voting Rights Act compliance advice to the [RNC], the Republican State Leadership Committee ("RSLC"), and their allies." Request for Judicial Notice ("RJN"), Exh. 5 at 1 (Memorandum In Support of Geographic Strategies' Response to Court Order of 7/12/19).

One of Dr. Hofeller's clients was the North Carolina General Assembly during the 2011 redistricting. The plaintiffs in *Common Cause v. Lewis* challenge the maps drawn by Dr. Hofeller for the North Carolina General Assembly as unconstitutional partisan gerrymanders.

On February 13, 2019, the plaintiffs in *Common Cause* subpoenaed documents from third-party Stephanie Hofeller, the daughter of Dr. Hofeller, regarding, among other things, Dr. Hofeller's work related to state legislative redistricting in North Carolina. RJN, Exh. 2 at 2-3 (Plaintiffs' Motion for the Court to Issue Direction to Legislative Defendants). In response to that subpoena, Ms. Hofeller produced four external hard drives and eighteen thumb drives that contained thousands of Dr. Hofeller's map-drawing and consulting documents. *Id*. at 3. Among the Hofeller documents were files from Dr. Hofeller that confirmed his involvement in

---

[1] *See*, *e.g.*, Reid Wilson, *Pioneer of Modern Redistricting Dies*, THE HILL (Aug. 18, 2018), *available at* https://thehill.com/homenews/state-watch/402489-pioneer-of-modern-redistricting-dies-at-75.

orchestrating Defendants' efforts to add a citizenship question to the 2020 decennial census for the advantage of, in his own words, "Republicans and Non-Hispanic Whites." Pellegrini Decl., ¶ 2, Exh. A (*La Unión Del Pueblo Entero v. Ross*, No 18-cv-01570-GJH (hereinafter, "*LUPE v. Ross*"), ECF No. 137-3, Grant Decl. Exh. 1 at Ex. D, p. 9) (hereinafter, "Use of CVAP in Redistricting Report").

On or about May 31, 2019, legislative defendants in *Common Cause v. Lewis* sought to unilaterally designate the Hofeller documents as "Highly Confidential/Outside Attorneys' Eyes Only" under the consent protective order in that case, and demanded that plaintiffs in *Common Cause v. Lewis* return and destroy the Hofeller documents in their entirety. RJN, Exh. 2 at 5.

On June 6, 2019, plaintiffs in *Common Cause* filed a motion requesting that the state court direct legislative defendants to stop pursuing the return or destruction of the Hofeller documents or the unilateral designation of materials produced by third parties as confidential or highly confidential under the consent protective order. RJN, Exh. 2 at 2.

On June 15, 2019, Geographic Strategies, a non-party to the *Common Cause* case, sought leave to intervene for the limited purpose of urging the court to designate all of the Hofeller documents as "Highly Confidential." RJN, Exh. 3 at 1-3 (Geographic Strategies LLC's Motion For Leave to Request An Order of Protection, And in The Alternative, To Intervene Under Rules 45 and/or 24). Geographic Strategies alleged that it owned "confidential and privileged documents" contained in the Hofeller documents. *Id*.

On July 12, 2019, Judge Paul Ridgeway, Judge Alma L. Hinton, and Judge Joseph N. Crosswhite (hereinafter, "the *Common Cause* court") issued, as an interim measure, an order that gave Geographic Strategies time to review the Hofeller documents and assert any specific claims of ownership, privileges, or other rights to any of the Hofeller documents, and extended the

"CONFIDENTIAL" designation of the documents, consistent with the parties' consent protective order, until September 10, 2019. RJN, Exh. 4 at 3-4 (Order on Geographic Strategies LLC's Motion to Designate Hoffeler Files as Highly Confidential and to Compel Production). The order also confirmed that it was "not intended to preclude or impair any other courts of competent jurisdiction from exercising its discretion and compelling the inspection, production or dissemination of any of the Hofeller files in connection with any other matter." *Id*. at 5.

On August 30, 2019, Geographic Strategies filed a response to the *Common Cause* court's order and filed under seal portions of the Hofeller documents over which it claims ownership. RJN, Exh. 5 (Memorandum In Support of Geographic Strategies' Response to Court Order of 7/12/19). Geographic Strategies also asserts that some of the documents contain trade secrets, attorney-client privilege communications, attorney work product, and other confidential material. *Id*. at 9-11. That same day, legislative defendants also filed under seal portions of the Hofeller documents that they assert are covered by either the attorney-client privilege or attorney work-product doctrine and asked the court to order those documents destroyed. RJN, Exh. 7 at 1-4 (Motion for the Court to Issue Direction to Plaintiffs Regarding Privileged Documents Within Their Possession and Control).

On September 5, 2019, the *Common Cause* court extended both the "CONFIDENTIAL" designation of the Hofeller documents and the deadline for plaintiffs and all interested parties to respond to Geographic Strategies' submissions to September 13, 2019. RJN, Exh. 8 at 1 (Order on Unopposed Motion for One-Week Extension of Time for Plaintiffs' Response to Geographic Strategies' August 30 submissions).

On September 13, 2019, counsel for Plaintiffs in this case, Mexican American Legal Defense and Educational Fund ("MALDEF") and Asian Americans Advancing Justice | AAJC

("Advancing Justice-AAJC") submitted an *amicus curiae* brief in support of the *Common Cause* plaintiffs that, among other things, informed the court that they were filing this present action and that the Plaintiffs in this case would suffer irreparable harm if the Hofeller documents are destroyed because of their importance to proving Plaintiffs' intentional discrimination and conspiracy claims. RJN, Exh. 9 (MALDEF and Advancing Justice-AAJC *amicus curiae* brief).

On September 24, 2019, the *Common Cause* court extended the "CONFIDENTIAL" designation of the Hofeller documents through October 27, 2019. RJN, Exh. 10 at 1.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(d) states that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," except when authorized by court order. District courts have "wide latitude in controlling discovery and . . . its rulings will not be overturned absent a showing of clear abuse of discretion." *Rowland v. Am. Gen. Fin., Inc.*, 340 F. 3d 187, 195 (4th Cir. 2003) (citing *Ardrey v. United Parcel Service*, 798 F. 2d 679, 682 (4th Cir. 1986)).

"Although the Federal Rules do not provide a standard for the court to use in exercising its authority to order expedited discovery, it is generally accepted that courts use" either (1) the "preliminary-injunction-style analysis,"[2] or (2) the "good cause" standard.[3] *St. Louis Group, Inc. v. Metals and Additives Corp*., Inc., 275 F.R.D. 236, 239 (S.D. Tex. 2011) (citations omitted).

---

[2] Under the "preliminary-injunction-style" approach, as set out in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), a court analyzes the following factors: "(1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of the irreparable injury; and (4) some evidence that the injury that will result without expedited discovery is greater than the injury the party will suffer if the expedited relief is granted." *Notaro*, 95 F.R.D. at 405.

[3] An increasing majority of courts throughout the country use the "good cause" standard to authorize expedited discovery. *St. Louis Group*, 275 F.R.D. at 239-41 (collecting cases); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill.

Most district courts in the Fourth Circuit apply a "good cause" analysis when determining whether expedited discovery is warranted. *See*, *e.g.*, *Diretto v. Country Inn & Suites By Carlson*, No. 1:16CV1037(JCC/IDD), 2017 WL 449315, at *3 (E.D. Va. Feb. 2, 2017) (applying the good cause standard); *Chryso, Inc. v. Innovative Concrete Sols. of the Carolinas, LLC*, No. 5:15-CV-115-BR, 2015 WL 12600175, at *3 (E.D.N.C. June 30, 2015) (finding that it is "more appropriate to apply the reasonableness-based test when a party seeks to conduct discovery prior to the Rule 26(f) conference" rather than the preliminary injunction style approach); *Me2 Prods., Inc. v. Does 1-16*, No. 4:16-CV-279-FL, 2016 WL 7017268, at *1 (E.D.N.C. Dec. 1, 2016) ("This court agrees with the courts in this circuit that have applied the reasonableness or good cause standard to requests for expedited discovery."); *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005) (determining that "a standard based upon reasonableness or good cause, taking into account the totality of the circumstances, is more in keeping with discretion bestowed upon the court in the [FRCP]"); *Carter v. Ozoeneh*, No. CIV. 3:08CV614, 2009 WL 1383307, at *3 (W.D.N.C. May 14, 2009) ("Generally speaking, the Court may authorize expedited discovery upon a showing of good cause.") (citing *Dimension Data N. A., Inc.*, 226 F.R.D. at 531-32).[4]

---

2000) (declining to apply the *Notaro* test and finding that "it makes sense to examine the discovery request, as we have done, on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances."); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002) (rejecting "the rigid *Notaro* standard" and finding "that the more flexible good cause standard . . . is the appropriate standard under Rule 26(d)").

[4] Some courts apply either a combination of the two approaches or neither standard. *See*, *e.g.*, *Synthes USA, LLC v. Davis*, No. 4:17-CV-02879-RBH, 2017 WL 5972705, at *10 (D.S.C. Dec. 1, 2017) (finding that "expedited discovery is warranted under either of the two standards for expedited discovery"); *Lewis v. Alamance Cnty. Dep't of Soc. Servs.*, No. 1:15CV298, 2015 WL 2124211, at *2 (M.D.N.C. May 6, 2015) (finding that "the Court need not determine which test to apply, because . . . Plaintiff has failed to satisfy either standard"); *Malon v. Franklin Fin. Corp.*, No. 3:14CV671 HEH-RCY, 2014 WL 5795730, at *3 (E.D. Va. Nov. 6, 2014) (allowing

Under the "good cause" analysis, a court examines the request "on the entirety of the record to date and the reasonableness of the request in light of the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 194 F.R.D. at 624). A court may find good cause where, under the totality of circumstances, "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276; *see also Energy Prod. Corp. v. Northfield Ins. Co.*, 2010 WL 3184232, at *3 (E.D. La. Aug. 6, 2010); *Fimab–Finanziaria Maglificio Biellese Fratelli Fila, S.p.A. v. Helio Import/Export, Inc.*, 601 F. Supp. 1, 3 (S.D. Fla.1983) (finding that immediate discovery "should be granted when some unusual circumstances or conditions exist that would likely prejudice the party if he were required to wait the normal time") (citing *Gibson v. Bagas Restaurants*, 87 F.R.D. 60, 62 (W.D. Mo. 1980)).

Courts often find good cause and grant expedited discovery when there is the potential for the loss or destruction of evidence. *See*, *e.g.*, *Gaming v. W.G. Yates & Sons Constr. Co.*, No. 1:16CV30, 2016 WL 3450829, at *3-*4 (W.D.N.C. June 16, 2016) (finding good cause for expedited discovery "to obtain information that may be lost to [the defendant] if the discovery is not allowed"). For example, in *Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11CV345, 2011 WL 2634166 (E.D. Va. July 1, 2011), the district court allowed plaintiffs expedited discovery to "immediately serve Rule 45 subpoenas" to acquire contact information associated with IP

---

expedited discovery where plaintiff "made a sufficiently colorable claim under Section 14(a) of the Securities and Exchange Act" and a showing of irreparable harm). A more limited number of courts have endorsed using some variation of the *Notaro* preliminary injunction test. *See ForceX, Inc. v. Tech. Fusion, LLC*, No. 4:11CV88, 2011 WL 2560110, at *5 (E.D. Va. June 27, 2011) (finding that "[i]n the absence of an endorsement from the Fourth Circuit as to the proper test for expedited discovery . . . this Court finds that it is more reliable to continue to use a formulation of the preliminary injunction test.").

addresses from internet service providers ("ISPs") because IP addresses change over time and ISPs only keep the customer names attached to the IP addresses for a short period of time. Likewise, in *Chryso, Inc.*, 2015 WL 12600175, at *1, the court found that Chryso was entitled to conduct limited expedited discovery "primarily" due "to the potential for the loss or destruction of electronically stored information."

Last, "leave to file subpoenas for early discovery should be granted if there is a showing of irreparable harm and need to proceed ex parte. When these factors are proven, expedited discovery is needed to ensure that 'justice is done to end the alleged harm.'" *Hard Drive Prods., Inc.*, No. 2:11CV345, 2011 WL 2634166, at *2 (citing *McMann v. Doe*, 460 F. Supp. 2d 259, 265-66 (D. Mass. Oct. 31, 2006)). Here, Defendants were served with the complaint on September 18 and 19, 2019, ECF Nos. 11-15, and have 60 days from date of service to file a responsive pleading, Fed. R. Civ. P. 12 (a)(2)-(3). Plaintiffs notified the Department of Justice ("DOJ") of their motion on September 26, 2019, and met and conferred with DOJ attorney, Stephen Ehrlich on September 30, 2019 who informed Plaintiffs that Defendants take no position on Plaintiffs' motion.[5] However, this motion must proceed ex parte because Defendants have not yet appeared. Moreover, there is no prejudice to Defendants because the early discovery sought is directed at a third-party records custodian, not the Defendants. Rather, as described below, Plaintiffs would be irreparably injured if they are forced to wait until after Defendants make an appearance and after the Rule 26(f) conference to serve the subpoena *duces tecum* for the Hofeller documents.

---

[5] Mr. Ehrlich further noted that "Defendants do not concede that the documents sought by Plaintiffs are relevant to this action, or that any discovery would be appropriate if this case survives Defendants' forthcoming motion to dismiss. Defendants also reserve their right to challenge the relatedness of this case with 18-cv-1570-GJH under Local Rule 103.1." Pellegrini Decl., ¶ 3, Exh. B at 1.

## ARGUMENT

### I. Good Cause Exists To Allow Plaintiffs' Limited Expedited Discovery.

Most district courts in the Fourth Circuit apply the good cause analysis as the proper standard because, "taking into account the totality of the circumstances, [it] is more in keeping with the discretion bestowed upon the court in the Federal Rules of Civil Procedure." *Dimension Data N. Am. Inc.*, 226 F.R.D. at 531. Indeed, the cases that apply the preliminary-injunction style approach are distinguishable from the present case, and from cases where a party seeks expedited discovery to preserve evidence, because they generally involve situations where the moving party seeks discovery in connection with a preliminary injunction motion. *See*, *e.g.*, *ForceX, Inc.*, 2011 WL 2560110, at *5 (finding that when the moving party seeks expedited discovery in connection with a motion for preliminary injunction, and absent guidance from the Fourth Circuit, it "is most logical to treat the motion for expedited discovery under a similar standard as to the preliminary injunction standard"). Because Plaintiffs' request for expedited discovery is to preserve evidence that may otherwise be unavailable under the current schedule, and is not in connection with a concurrent motion for a preliminary injunction, case law supports a good cause analysis of Plaintiffs' request for expedited discovery.

Plaintiffs' request for limited and narrow expedited discovery satisfies the good cause analysis. Under the good cause analysis, factors that courts consider "include the procedural posture of the case, whether the discovery requested is narrowly tailored, whether the party seeking the information would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference, and whether the information sought would be unavailable or subject to destruction in the absence of expedited production." *Me2 Prods.*, 2016 WL 7017268, at *1.

Good cause exists for expedited discovery because Plaintiffs would be irreparably harmed if they are unable to subpoena relevant portions of the Hofeller documents immediately because the legislative defendants in the *Common Cause* case and Geographic Strategies seek to have all of the Hofeller documents permanently shielded as confidential and/or destroyed.

**a. The Documents Sought Are Relevant To Plaintiffs' Claims.**

Plaintiffs here allege that Defendants conspired to discriminate against Latinos and non-U.S. citizens when they instructed the Census Bureau to collect CVAP data and to produce the data, either within or alongside the Public Law 94-171 Redistricting Data File, to states who wish to exclude non-U.S. citizens from the population base used for redistricting. Plaintiffs assert that Defendants' actions violate the equal protection guarantee of the Fifth Amendment and constitute a conspiracy to violate civil rights under 42 U.S.C. § 1985(3).

The Hofeller documents are relevant to the *Arlington Heights* factors that constitute the mosaic of evidence that gives rise to an inference of discrimination. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977).[6] Indeed, the Hofeller documents that have thus far been made public demonstrate that the presidential directive that the Census Bureau collect citizenship data and produce this data for use with the P.L. 94-171 Redistricting Data File was motivated by a racially discriminatory scheme to reduce Latino representation and increase over-representation of non-Latino Whites, thereby serving Republican political ends at the expense of Latinos. For example, using the Texas State House of Representatives as a case study, Dr. Hofeller detailed how a switch from drawing equipopulous legislative districts based

[6] The non-exhaustive list of factors include: (1) disparate impact, i.e., whether the action "bears more heavily on one race than another"; (2) the "historical background of the decision . . . particularly if it reveals a series of official actions taken for invidious purposes"; (3) [d]epartures from the normal procedural sequence" and "[s]ubstantive departures. . ." "particularly if the factors usually considered important. . . favor a decision contrary to the one reached," and (4) "contemporary statements" by those deciding the issue. *Arlington Heights*, 429 U.S. at 266-68.

on total population, as required by Supreme Court precedent, *see, e.g.*, *Wesberry v. Sanders*, 376 U.S. 1 (1964), to drawing districts based on CVAP would reduce the number of districts in South Texas, El Paso, and the Rio Grande Valley. He explained that this reduction in the number of districts would occur because a "considerable population would have to be added to a majority of the Latino districts to bring their population up to acceptable levels." Pellegrini Decl., ¶ 2, Exh. A (Use of CVAP in Redistricting Report at pp. 6-8, Tables 4-8). Dr. Hofeller concluded that using CVAP as an apportionment base would eliminate five of the current thirty-five Latino-majority House districts. *Id.* at 8-9; *see also id.* at Table 2 (demonstrating that the areas experiencing the greatest losses in districts generally had the highest Hispanic population). Dr. Hofeller acknowledged that the shift from redistricting based on total population to CVAP was a "radical departure"—one that would alienate Hispanic voters. *Id.* at 8. But, he concluded, "[a] switch to the use of citizen voting age population as the redistricting population base for redistricting would be advantageous to Republicans and Non-Hispanic Whites." *Id.* at 9.

The work Dr. Hoffeller performed for the RNC in the 2000 redistricting cycle included analysis that allowed Geographic Strategies to advise affiliated Republican groups in many states, not just North Carolina, and Geographic Strategies resumed those analytic and advisory roles for the RNC in 2010. RJN, Exh. 6 at 4-5 (Oldham Decl., ¶¶ 5-7). Dr. Hofeller acquired as many redistricting proposals as possible across the country in connection with his work. His review and analysis included not only maps, but also census and election data that would allow him to provide comprehensive strategic advice to meet his clients' political requirements.[7] *Id*. at 6-7 (Oldham Decl., ¶ 12). It is reasonable to assume, then, that the documents at issue are likely

[7] Any litigation expertise or work would be provided separate and apart from such analyses, and would be contracted separately. *Id*. at 6-7 (Oldham Decl., ¶ 12).

to contain analysis similar to the analysis of Texas districts contained in the already-public Hofeller report. Pellegrini Decl., ¶ 2, Exh. A (Use of CVAP in Redistricting Report).

Throughout the litigation challenging the addition of a citizenship question to the decennial census, including before the Supreme Court, Defendant Ross maintained that he decided to add the citizenship question to the 2020 decennial census so that the Department of Justice could better enforce the Voting Rights Act of 1965. The documents produced during that litigation revealed instead that Defendant Ross, members of the Trump Administration, A. Mark Neuman, then-Kansas Secretary of State Kris Kobach, members of the DOJ, including then-Attorney General Jefferson Sessions ("AG Sessions") and head of the DOJ's Civil Rights Division John Gore, and Republican strategist Dr. Thomas Hofeller conspired to add a citizenship question to the 2020 census to reduce the response rates of people of color and immigrants, and exclude them from congressional apportionment and redistricting to achieve the objective of reducing their political power. *See generally LUPE v. Ross*, ECF No. 137.

As evidence of Plaintiffs' claims, Plaintiffs seek to subpoena Hofeller's work related to the use of CVAP in redistricting, similar to the Use of CVAP in Redistricting Report discussed above, that was discovered in the Hofeller documents in the *Common Cause* case and any other documents contained in Dr. Hofeller's files that confirm the racially discriminatory motive for collecting and reporting CVAP for states to use for redistricting.[8]

---

[8] Staff at The New Yorker have copies of the Hofeller documents and confirmed that the Hofeller documents contain files that document Dr. Hofeller's and other Republican efforts to add a citizenship question to the census so that states could use that data for redistricting to "make it easier to pack Democrats and minorities into fewer districts, giving an advantage to Republicans." David Daley, *The Secret Files of the Master of Modern Republican Gerrymandering*, THE NEW YORKER (Sept. 6, 2019), *available at* https://www.newyorker.com/news/news-desk/the-secret-files-of-the-master-of-modern-republican-gerrymandering.

**b. Plaintiffs' Request For Limited Expedited Discovery Is Narrowly Tailored In Scope.**

Plaintiffs' request for expedited discovery is narrowly tailored in scope and is limited to a request to serve a Rule 45 subpoena *duces tecum* on *Common Cause* plaintiffs and/or Stephanie Hofeller for the Hofeller documents. Plaintiffs do not request any other expedited discovery and believe that all other discovery can proceed under the regular schedule as set forth under Rule 26(d).

**c. Plaintiffs Would Be Irreparably Injured If The Hofeller Documents Are Destroyed Before Plaintiffs Can Subpoena Them.**

"Allowing [plaintiffs] to engage in discovery at this early stage would ensure that data is preserved so that it can be utilized by the parties throughout the course of this litigation." *Chryso*, 2015 WL 12600175, at *5. The Hofeller documents are a direct insight into Defendants' motivations for collecting and reporting CVAP data so that states can use it for redistricting, and Plaintiffs would be irreparably injured if that vital information is not preserved.

Under *Arlington Heights*, one of the factors that a court considers is the "historical background of the decision . . . particularly if it reveals a series of official actions taken for invidious purposes." 429 U.S. at 267. Dr. Hofeller's 2015 Use of CVAP in Redistricting Report, his communications with members of the Trump Administration and the Trump transition team, and his involvement in the DOJ letter are part of a racially discriminatory scheme to dilute the representation of Latinos and increase overrepresentation of non-Hispanic Whites. The Hofeller documents provide the direct link between the explicitly discriminatory purpose behind both adding a citizenship question and now collecting citizenship data and Defendants' actions. Therefore, destruction of the Hofeller documents would result in the

destruction of key evidence that establishes Defendants' motivations behind collecting and reporting CVAP. Plaintiffs would be irreparable harmed if this important evidence is destroyed.

**d. Absent Expedited Discovery, The Hofeller Documents May Be Unavailable Or Subject To Destruction.**

Due to unusual circumstances, Plaintiffs cannot wait until after the Rule 26(f) conference to subpoena the Hofeller documents because they may be subject to destruction or otherwise unavailable at that time. "[W]hen some unusual circumstances or conditions exist that would likely prejudice the party if [they] were required to wait the normal time," expedited discovery should be granted. *Fimab–Finanziaria Maglificio Biellese Fratelli Fila*, 601 F. Supp. at 3.

The legislative defendants in *Common Cause* and Geographic Strategies seek to have the Hofeller documents destroyed or marked "Highly Confidential/Outside Attorneys' Eyes Only" which would effectively require the *Common Cause* plaintiffs to imminently destroy the Hofeller documents. *See*, *e.g.*, RJN Exhs. 1 at 8 (Consent Protective Order ¶ 17), 3, 5 & 7. The *Common Cause* court has temporarily extended the designation of "Confidential" through October 27, 2019, but has yet to issue a definitive ruling on the future of these important documents. To ensure that Plaintiffs are able to subpoena these documents, they must be able to do so right away. Any significant delay could result in Plaintiffs' inability to subpoena them in the future. This is precisely the type of unusual circumstances that warrant expedited discovery. *See*, *e.g.*, *Hard Drive Prods., Inc.*, No. 2011 WL 2634166, at *3 (allowing plaintiffs to "immediately serve Rule 45 subpoenas" to preserve evidence that would possibly be destroyed without expedited discovery).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request an order granting them leave for the narrow purpose of serving a Rule 45 subpoena on third-party records custodian *Common*

*Cause* plaintiffs and/or Stephanie Hofeller.

Dated: October 1, 2019

Respectfully submitted,

**By** /s/ Terry Ao Minnis

**ASIAN AMERICANS ADVANCING JUSTICE | AAJC**
John C. Yang (IL Bar No. 6210478)*
Niyati Shah (NJ Bar No. 026622005)*º
Terry Ao Minnis (MD Bar No. 20547)º
Eri Andriola (NY Bar No. 5510805)*º

1620 L Street, NW, Suite 1050
Washington, DC 20036
Phone: (202) 815-1098

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
Thomas A. Saenz (CA Bar No. 159430)*º
Denise Hulett (CA Bar No. 121553)*º
Andrea Senteno (NY Bar. No. 5285341)**º
Tanya G. Pellegrini (CA Bar No. 285186)*º
Julia A. Gomez (CA Bar No. 316270)*º

1016 16th Street NW, Suite 100
Washington, DC 20036
Phone: (202) 293-2828
Facsimile: (202) 293-2849

* Pro hac vice *applications forthcoming*
*** Application for admission forthcoming*
º *Not admitted in DC.*

**CERTIFICATE OF SERVICE**

I certify that on this 1st day of October, 2019, I caused a copy of the Motion for Leave to Conduct Early Discovery to be sent to all parties receiving CM/ECF notices in this case.

___/s/ Terry Ao Minnis_________
Terry Ao Minnis