UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, PROMISE ARIZONA, LYDIA CAMARILLO, JUANITA VALDEZ-COX, ROGENE GEE CALVERT, ZEENAT NISHA HASAN, and CANDY L. GUTIERREZ,<br><br>        *Plaintiffs*,<br>  v.<br><br>WILBUR L. ROSS, sued in his official capacity as U.S. Secretary of Commerce,<br><br>STEVEN DILLINGHAM, sued in his official capacity as Director of the U.S. Census Bureau,<br><br>U.S. DEPARTMENT OF COMMERCE, and<br><br>U.S. CENSUS BUREAU,<br><br>        *Defendants*. | Civil Action No. 8:19-cv-02710-GJH<br><br>Hon. George J. Hazel |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO UN-RELATE
AND REASSIGN THIS CASE**

**INTRODUCTION**

Since taking office in 2017, the Trump Administration has sought to diminish the political representation of Latinos, non-U.S. citizens, immigrants, and communities of color by manipulating the Census Bureau's information collection and reporting processes.  First, Defendants sought to accomplish their discriminatory goal by adding a question to the 2020 decennial census questionnaire that would have collected citizenship information from every individual in this country.  That was Plan A.  After Plan A was enjoined by various courts, including the Supreme Court and this Court, Defendants proceeded to Plan B.  Plan B seeks to collect the same information, citizenship data, but instead of collecting it through a question on the 2020 census questionnaire, Defendants seek to collect citizenship data using administrative records.  Although the means have changed, the goal is the same:  collect citizenship data so that states can use the data for redistricting in 2021 to benefit non-Hispanic Whites and Republicans.

Several of the same plaintiffs who challenged the Trump Administration's decision to add a citizenship question to the 2020 census again petition this Court to prevent Defendants from accomplishing their discriminatory objective.  Accordingly, Plaintiffs properly designated this case as related to the earlier case challenging Defendants' decision to add a citizenship question to the 2020 census because it involves overlapping questions of fact and law, involves several identical parties, and would entail substantial duplication of labor if heard by a different judge.

**BACKGROUND**

**The Citizenship-Question Lawsuit**

On May 31, 2018, plaintiffs in *La Unión Del Pueblo Entero (LUPE) v. Ross*, No. 18-cv-01570-GJH (D. Md.) (hereinafter, the "citizenship-question case") filed a lawsuit challenging the

addition of a citizenship question to the 2020 decennial census.[1]  The case was later consolidated for trial with another case before this Court also involving a challenge to the citizenship question, *Kravitz v. Department of Commerce*, No. 18-cv-1041 (D. Md.) (hereinafter we refer to the consolidated cases as "*Kravitz*").  In *Kravitz*, plaintiffs sought declaratory and injunctive relief to preserve the integrity of the decennial census and prevent Defendants from violating the Fifth Amendment's equal protection guarantee, the Apportionment and Enumeration Clauses, the Administrative Procedure Act ("APA"), and 42 U.S.C. § 1985, conspiracy to violate civil rights (citizenship-question case only).  *Id.*, ECF 42 ¶ 2.

On April 5, 2019, after a six-day bench trial, this Court granted plaintiffs' requested relief and found, among other things, that:

> [T]he decision to add a citizenship question to the 2020 Census was arbitrary and capricious in violation of the APA; Defendants' actions violate the Constitution by unreasonably compromising the distributive accuracy of the Census contrary to the Enumeration Clause's mandate; and Plaintiffs did not meet their burden to prove Defendants' actions violate the Due Process Clause or amount to a conspiracy to violate civil rights because Plaintiffs failed to show that the addition of the citizenship question was motivated by invidious racial discrimination.

*Kravitz v. Dep't of Commerce*, 366 F. Supp. 3d 681, 691 (D. Md. 2019).

This Court permanently enjoined Defendants from:

> [I]ncluding a citizenship question on the 2020 decennial Census questionnaire; from delaying the process of printing the 2020 decennial census questionnaire after June 30, 2019 for the purposes of including a citizenship question; and from asking persons about citizenship status on the 2020 Census questionnaire or otherwise asking a citizenship question as part of the 2020 decennial Census.

*Kravitz v. Dep't of Commerce*, No. 18-cv-1041 (D. Md. July 16, 2019), ECF 203.

---

[1] The plaintiffs in the prior *LUPE* lawsuit consisted of seven individual plaintiffs and twenty-five organizational plaintiffs. *LUPE v. Ross*, No. 18-cv-01570-GJH (D. Md.), ECF 42 ¶¶ 1-130.

The parties appealed the Court's April 5 ruling, and while the decision was pending on appeal, the Supreme Court heard arguments in *Department of Commerce v. New York*, No. 18-966, a parallel consolidated case involving challenges to the citizenship question.

On June 3, 2019, the *Kravitz* plaintiffs moved for relief from judgment and sought an indicative ruling from this Court based on "newly discovered evidence" from the late map drawer and Republican strategist, Dr. Thomas Hofeller, that "provide[d] the link between the explicitly discriminatory purpose behind the citizenship question and the Commerce Department's actions." *Kravitz*, No. 18-cv-1041 (D. Md. June 3, 2019), ECF 162-1 at 1.  This Court concluded that the "newly discovered evidence" raised a "substantial issue" because it "suggests that Dr. Hofeller was motivated to recommend the addition of a citizenship question to the 2020 Census to advantage Republicans by diminishing Hispanics' political power." *Kravitz*, No. 18-cv-1041 (D. Md. June 24, 2019), ECF 175 at 8, 13.  Consequently, on June 25, 2019, the Fourth Circuit granted *Kravitz* plaintiffs' motion to remand for further proceedings on the Fifth Amendment and conspiracy claims. *Kravitz*, No 19-1382 (4th Cir. June 25, 2019), ECF 45.

On June 27, 2019, the Supreme Court vacated and remanded Secretary Ross's decision to add a citizenship question to the 2020 decennial census, holding that the Secretary's decision violates the APA because his rationale for adding a citizenship question "seems to have been contrived." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019).

On August 19, 2019, the Fourth Circuit remanded *Kravitz* to this Court with instructions to vacate paragraph six of the Court's April 5 order. *LUPE v. Ross*, No 19-1425 (4th Cir. Aug. 19, 2019), ECF 52.[2]

---

[2] Paragraph six states: "Final judgment is entered for Defendants and against Plaintiffs on Plaintiffs' claims arising under the Due Process Clause of the Fifth Amendment of the Constitution (Count II of the *Kravitz* Plaintiffs' Third Amended Complaint, ECF No. 86 (18-

3

**The Current Lawsuit**

On July 11, 2019, President Trump issued Executive Order 13880, Collecting Information about Citizenship Status in Connection with the Decennial Census ("EO 13880"). Among other things, EO 13880 directs Secretary Ross to instruct the Census Bureau to create an inter-agency working group to collect citizenship data in connection with the 2020 decennial census for states to use in redistricting. On July 12, 2019, the Census Bureau published a notice dated July 3, 2019, stating that Secretary Ross had directed the Census Bureau to collect and produce Citizenship Voting Age Population ("CVAP") information prior to April 1, 2021 that states may use in redistricting.

On September 13, 2019,[3] Plaintiffs filed this lawsuit, alleging that the President's order and Secretary Ross's directive that the Department of Commerce provide states with CVAP information for redistricting is motivated by a racially discriminatory scheme to reduce Latino political representation and increase the over-representation of non-Latino Whites, unlawfully advantaging White voters at Latino voters' expense.

Plaintiffs allege that EO 13880 and Secretary Ross's directive should be set aside because they violate the APA, and that Defendants' actions should be enjoined because they are motivated by racial animus, are discriminatory toward Latinos and non-citizens, and are the result of a partisan conspiracy intended to dilute the representation of non-citizens and Latinos, in violation of the equal protection guarantee of the Fifth Amendment of the U.S. Constitution, and 42 U.S.C. § 1985(3).

---

1041) and Count II of the LUPE Plaintiffs' Amended Complaint, ECF No. 42 (18-1570))." *LUPE v. Ross*, 18-cv-01570-GJH (D. Md.), ECF 126 at 2.

[3] On October 9, 2019, Plaintiffs amended their complaint to add three individuals from Texas, Arizona, and Washington.

When Plaintiffs filed their complaint, they indicated on the civil cover sheet that this case is related to *LUPE v. Ross*, No. 18-cv-1570, which was later consolidated with the *Kravitz* case. ECF 1-1.

## LEGAL STANDARD

Generally cases are randomly assigned to judges in this district. However, in the interest of judicial economy, Local Rule 103.1(b)(i) creates an exception to the random assignment rule.[4] The District of Maryland Local Rules state:

> If counsel for a plaintiff in a civil action believes that the action being filed and one (1) or more other civil actions or proceedings previously decided or pending in this Court (1) arise from the same or identical transactions, happenings, or events; (2) involve the identical parties or property; (3) involve the same patent or trademark; *or* (4) for any other reason would entail substantial duplication of labor if heard by different judges, counsel shall indicate that fact by designating the case as a "related case" on the civil cover sheet.

Local Civ. R. 103.1(b)(i) (emphasis added).

"In determining whether cases are related, the paramount consideration is whether assigning them to the same district judge will further the efficient administration of justice." *Habitat Educ. Ctr., Inc. v. Kimbell*, 250 F.R.D. 390, 396 (E.D. Wis. 2008) (finding four cases to be related because, although they did not arise from the exact same transaction or event, they

---

[4] Defendants' description of the legal standard for determining whether cases are properly related rests on inapposite cases where plaintiffs manipulated the judicial process by engaging in improper "judge-shopping." *See*, *e.g.*, *In re BellSouth Corp.*, 334 F. 3d 941, 958 (11th Cir. 2003) (examining the proper course of action where a party is accused of contriving to engineer the recusal of a judge by hiring a close relative of the judge as counsel); *Vaqueria Tres Monjutas, Inc. v. Rivera Cubano*, 341 F. Supp. 2d 69 (D.P.R. 2004) (finding that plaintiffs were "judge-shopping" where they voluntarily dismissed their case after losing a preliminary injunction motion only to refile the same case to try again with a different judge); *United States v. Kelly*, 519 F. Supp. 1029 (D. Mass. 1981) (denying objection to case related designation where the U.S. Attorney moved to disqualify federal judge from a criminal case on alleged prior relationship between the judge and defendant where the motion was based on mere innuendo and rumor that was ultimately refuted). Here, there are no allegations or evidence that Plaintiffs contrived to manipulate the judicial process or engaged in any wrongdoing.

5

involved similar factual circumstances and the "administrative records of the projects substantially overlap") (citing Fed. R. Civ. P. 1).

District courts have discretion to determine whether a case is properly designated as related to a prior filed case. *Access Now, Inc. on behalf of New v. Allen Edmonds Corp.*, No. 17CV0959, 2017 WL 4023258, at *1 (W.D. Pa. Sept. 13, 2017) ("this Court has discretion to reject an assignment if the Court determines that a case was not related to a prior filed case, or if the assignment would not promote the convenience of the parties or witnesses or the just and efficient conduct of the action.") (internal citations omitted); *see also United States v. Stone,* 411 F.2d 597, 599 (5th Cir. 1969) ("District Judges have the inherent power to transfer cases from one to another for the expeditious administration of justice.").

## ARGUMENT

Plaintiffs properly designated this case as related to the citizenship-question case, and assignment to this Court is proper. The two cases involve similar factual questions and legal issues, similar parties, and the same counsel, "such that judicial economy would be served by having these matters resolved by the same judge." *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010).

**I.     This Case And The Citizenship-Question Case Arise From The Same Transactions, Happenings, Or Events.**

Defendants argue that this case is not related to the citizenship-question case because "the prior case 'ar[o]se from' the Secretary's decision to include a citizenship question on the 2020 Census" while "this case 'arise[s] from' the President's decision to gather citizenship information from administrative records." ECF 44-1, Defendants' Corrected Memorandum of Law in Support of Defendants' Motion to Un-Relate and Reassign This Case ("Defs.' Opp. Mem."), at 10.

Defendants' argument fails for several reasons.  First, Defendants ignore the fact that Plaintiffs are in fact challenging action by the Secretary and not just action by the President.[5] Plaintiffs are challenging Secretary Ross's July 2019 directive to the Census Bureau "to collect and produce [CVAP] information prior to April 1, 2021 that states may use in redistricting."  ECF 41, Plaintiffs' First Amended Complaint ("FAC"), ¶ 1.

Second, and more importantly, despite Defendants strained efforts to find a few examples of differing factual questions in a case with a myriad of complicated factual issues, the two cases arise from the same "transactions, happenings, or events."  Defs.' Opp. Mem. at 11-12.  "By concentrating on how the cases diverge, defendant[s'] arguments miss the mark: related cases need not be identical."  *Moore v. Rite Aid Hdqtrs Corp.*, No. CIV.A. 13-1515, 2013 WL 4833854, at *2 (E.D. Pa. Sept. 11, 2013).  The proper focus is on whether "the two cases contain central events with a core of similarity, such that assigning the cases to one judge would increase judicial efficiency."  *Id*.

Here, the factual questions at the heart of both cases is that Defendants and others outside the government conspired with the Trump Administration, in some form or another (either through a question on the census questionnaire or through administrative records), to collect citizenship information to dilute the political strength and representation of Latinos (and other communities of color) and non-U.S. citizens.  Although the intricate details and mechanics of the actions taken to effectuate the conspiracy may differ somewhat, there is substantial factual overlap between the two cases "such that assigning the cases to one judge would increase judicial efficiency."  *Id*.

---

[5] The discriminatory motive of both the President and the Secretary were also at issue in the previous litigation. *See*, *e.g.*, *LUPE v. Ross*, No. 18-cv-1570 (D. Md.), ECF 137-1 at 6-8, 11-13; *see also Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266-68 (1977).

7

For example, Plaintiffs in both cases allege that Defendants and the Trump Administration took part in a conspiracy to intentionally discriminate against and dilute the political power of Latinos, non-U.S. citizens, and communities of color to benefit non-Latino White, Republicans. The conspiracy began in at least 2017 when President Trump took office, and has continued to the present day. The factual issues raised in the citizenship-question case related to this conspiracy did not end when Defendants were enjoined from adding a citizenship question to the 2020 census, rather, that was only the first part of the story. Indeed, in the Department of Commerce's July 2019 OMB submission, Information Collection Request 2020 Census – Enumeration Operations OMB Control Number 0607-1006 ("July 2019 OMB submission"), the Department noted that because the Supreme Court ruled that the Secretary's decision to add a citizenship question did not meet APA standards, that the Census Bureau would essentially move on to Plan B:

> The Department, having carefully considered the matter, has determined that there is not sufficient time to develop an alternative record to support inclusion of the citizenship question. Accordingly, the Secretary has directed the Census Bureau to proceed with the 2020 Census without a citizenship question on the questionnaire, and rather to produce Citizenship Voting Age Population (CVAP) information prior to April 1, 2021 that states may use in redistricting.

FAC ¶ 65 (quoting the July 2019 OMB submission at 18).[6] In determining Plaintiffs' conspiracy claim, the Court will be called upon to examine the factual predicate that includes many of the same facts from the citizenship-question case. *See*, *e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252. 266-68 (1977) (identifying a non-exhaustive list of factors that may constitute part of the mosaic of evidence that can give rise to an inference of discrimination).

---

[6] *Paperwork Reduction Act Program, Information Collection Request 2020 Census - Enumeration Operations OMB Control Number 0607-1006*, Department of Commerce and U.S. Census Bureau at 18 (July 3, 2019), *available at* https://www.documentcloud.org/documents/6192581-2020-Census-Supporting-Statement-A- Revised-July.html#document/p18/a512146.

Moreover, courts have found that where a discriminatory purpose infected a prior policy, that discriminatory purpose can also provide evidence that a new policy is similarly motivated by discriminatory intent. *See*, *e.g.*, *Hunter v. Underwood*, 471 U.S. 222 (1985) (looking at the original enactment of a state constitutional provision to support finding that, even 80 years later and after several changes, the provision was still discriminatory); *N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016) ("That a legislature impermissibly relied on race" in enacting a prior election law "certainly provides relevant evidence as to whether race motivated other election legislation passed by the same legislature.").

In addition to common questions of fact related to Plaintiffs' conspiracy claim, there are common questions of fact as to Plaintiffs' APA claims. Many of the policies and procedures that govern the Census Bureau's collection of information from direct inquiries on the 2020 census questionnaire apply to the Census Bureau's collection of information from administrative records. *See*, *e.g.*, FAC ¶¶ 21-35, 46-47, 49-50; Defendants' Exh. A in support of Defendants' motion to unrelated and reassign the case ("Defs.' Exh. A"), ECF 44-2 ¶¶ 137-172. Furthermore, several Census Bureau studies and analyses regarding the effectiveness and appropriateness for collecting citizenship data through either a survey or administrative records are relevant in both cases. *See*, *e.g.*, FAC ¶¶ 66-72; Defs.' Exh. A ¶¶ 168, 202, 207. Relatedly, in assisting the Court in its findings of fact, there will likely be overlap in the experts and expert topics between the two cases.

Moreover, when determining whether cases are properly related, courts do not require complete factual overlap or that that there be no factual difference, *see*, *e.g.*, *Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157, 160 (D.D.C. 2002) (finding that "although differences may exist between the [two cases], there are clearly issues of

fact that are common to both cases that are sufficient to" relate the two cases), rather, relation is appropriate where there are "many" overlapping "factual issues that [the] Court must resolve" in both cases, *id*. at 159. Here, there are many overlapping factual issues. Both cases involve factual questions related to Census Bureau internal policies and practices regarding information collection and reporting.

Third, Defendants argue that "Plaintiffs now take issue with the exact decision some of them previously desired—the use of administrative records to gather citizenship data." Defs.' Opp. Mem. at 7. Assuming, *arguendo*, that Defendants' point had merit, it suggests that relation of these cases is appropriate given that this Court is in the best position to determine what arguments Plaintiffs previously made and whether or not they are consistent with the arguments Plaintiffs now make.

Fourth, Defendants claim that "there is no overlap in legal issues" between the two cases because Plaintiffs do not "advance [] Enumeration or Apportionment Clause claims." Defs.' Opp. Mem. at 12. However, there is substantial overlap of legal claims and all of the claims in the current case are identical to claims that were raised in the citizenship-question case. Both cases assert claims for violation of the APA (FAC ¶¶ 88-109; *Kravitz*, 366 F. Supp. 3d at 691, 742-51), the Fifth Amendment's equal protection guarantee (FAC ¶¶ 110-113; *Kravitz*, 366 F. Supp. 3d at 691, 752-55), and conspiracy to violate civil rights under 42 U.S.C. § 1985(3) (FAC ¶¶ 114-117; *Kravitz*, 366 F. Supp. 3d at 691, 752-55). The only different legal theory is that in the citizenship-question case, plaintiffs raised a claim under the Enumeration Clause of the Constitution. The fact that one of the claims is not identical is not sufficient to un-relate these cases. *See* Local Civ. R. 103.1(b)(i) (relation of cases is proper when "for any other reason would entail substantial duplication of labor if heard by different judges").

Additionally, the cases share many similar factual questions related to the type of harm alleged by the plaintiffs and they share the same ultimate goal. In the citizenship-question case, plaintiffs alleged, *inter alia*, that they would be harmed by the addition of the citizenship question because an undercount in their communities would result in inaccurate redistricting data that would disproportionately exclude non-citizens and would cause intrastate vote dilution. *Kravitz*, 366 F. Supp. 3d at 723-25. Here, Plaintiffs similarly allege that administratively collecting and disseminating citizenship data for use by the states as a redistricting population base that excludes non-citizens will result in intrastate vote dilution. FAC ¶¶ 85-87. In both cases, plaintiffs express the same goal: to prevent Defendants from carrying out their conspiracy to use the Census Bureau to collect and report citizenship data that will either disproportionately or purposefully exclude non-U.S. citizens from apportionment to the advantage of non-Latino White Republican voters and at the expense of the Latino community. *See Assiniboine & Sioux Tribe*, 211 F. Supp. 2d at 158-59 (finding that cases were properly related where the individual Indian plaintiffs and Indian tribe plaintiff sought the same "ultimate goal").

## II.     This Case And The Citizenship-Question Case Involve Identical Defendants And Several Of The Same Plaintiffs.

Defendants admit that there is overlap in the parties but argue that the case should not be related because this case "adds four plaintiffs" and "subtracts 24 organizations and six individuals." Defs.' Opp. Mem. at 15-16. However, courts do not require that every party be identical to relate cases. *See*, *e.g.*, *Singh v. McConville*, 187 F. Supp. 3d 152, 157 (D.D.C. 2016) (finding that even though "the Court will conduct an individual analysis with respect to each plaintiff to determine whether each plaintiff is entitled to the relief he seeks does not obviate the need for factual determinations related to the defendants' regulations and policies, and their administrations of those policies, which are common to both cases.").

For example, in *Assiniboine & Sioux Tribe*, 211 F. Supp. 2d 157, the court found that a case brought by an Indian tribe against the Secretary of the Interior to compel performance of trust obligations was properly "related" to a suit filed by individual Indian plaintiffs against the trustee-delegates of the United States and other federal officials alleging that the federal government's trustee-delegates had breached their fiduciary duties.

Likewise, in *Autumn Journey Hospice*, the court found that a case brought by a hospice care provider to whom Health and Human Services ("HHS") issued a Medicare cap repayment demand was related to a case brought by a different hospice care provider that also challenged the hospice cap regulation even though they were not "identical parties." *Autumn Journey Hospice*, 753 F. Supp. 2d at 138-41.

Here, there is significant overlap between the parties in this case and the citizenship-question case including identical Defendants and several identical plaintiffs that is sufficient to "relate" the two cases. Plaintiffs La Unión Del Pueblo Entero, Promise Arizona, and Juanita Valdez-Cox are identical in both cases, and Plaintiff Lydia Camarillo, although not named in the citizenship-question case, was involved as the Executive Director of Plaintiff Southwest Voter Registration Education Project.

The Defendants in both cases are also virtually identical. The technical difference is that at the time of filing the citizenship question case, the Acting Director of the Census Bureau was Ron Jarmin and now the Director of the Census Bureau is Steven Dillingham. However, this is a distinction without a difference because plaintiffs sued both Mr. Jarmin and Mr. Dillingham in their official capacity as Director of the Census Bureau and did not sue them personally. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official

capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## III. There Will Be "Substantial Duplication Of Labor" If This Case Is Heard By A Different Judge.

Contrary to Defendants' assertion otherwise, there is substantial overlap in factual questions and legal issues, such that there would be "substantial duplication of labor" if a different judge heard this case. Local Civ. R. 103.1(b)(i). As discussed above, there is significant overlap between the factual questions and legal issues.

Defendants are wrong about the facts and the law, and none of the cases cited by Defendants support un-relating these cases and reassigning the present case. For example, in *Molinari v. Bloomberg*, No. CV08-4539 (ERK)(JO), 2008 WL 4876847, at *2 (E.D.N.Y. Nov. 12, 2008), the district court found that aside from having one plaintiff in common between the two cases, there were no other commonalities of fact or legal issues between the two cases, and therefore relation was not proper. Here, the citizenship-question case and the present case have much more than just one party in common.

Similar to the other cases cited by Defendants, *Singh*, *Autumn Journey Hospice*, and *Assiniboine & Sioux Tribe*, this case should be related to the citizenship-question case because there is substantial overlap in factual questions and legal issues, and there would be "substantial duplication of labor" if a different judge heard this case. *Singh*, 187 F. Supp. 3d at 156 (holding that relation was proper because the court would "be required to make similar factual determinations in both cases related to . . . defendants' justifications for their regulations and policies, and the defendants' discriminatory conduct and/or intent, if any"); *Autumn Journey Hospice*, 753 F. Supp. 2d at 138-41 (finding that a case brought by a hospice care provider to whom HHS issued a Medicare cap repayment demand was related to a case brought by a different

hospice care provider that also challenged the hospice cap regulation because the cases "share[d] common factual issues and arise out of a common event or transaction . . . such that judicial economy would be served by having [the] matters resolved by the same judge."); *Assiniboine & Sioux Tribe*, 211 F. Supp. 2d at 159 (holding that two cases brought by individual Indian plaintiffs and an Indian tribe plaintiff were related where they shared several significant common issues of fact and "[i]t would waste judicial resources and be nonsensical to have another court address these same factual issues, particularly in light of the fact that this Court has already heard weeks of testimony" concerning the Department of the Interiors' operations and computer systems).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion to un-relate and reassign this case.

Dated:  October 25, 2019                    Respectfully submitted,

**By** /s/ Terry Ao Minnis

**ASIAN AMERICANS ADVANCING JUSTICE | AAJC**
John C. Yang (IL Bar No. 6210478)*
Niyati Shah (NJ Bar No. 026622005)º
Terry Ao Minnis (MD Bar No. 20547)º
Eri Andriola (NY Bar No. 5510805)º

1620 L Street, NW, Suite 1050
Washington, DC 20036
Phone: (202) 815-1098

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
Thomas A. Saenz (CA Bar No. 159430)º
Denise Hulett (CA Bar No. 121553)º
Andrea Senteno (NY Bar. No. 5285341)**º
Tanya G. Pellegrini (CA Bar No. 285186)º
Julia A. Gomez (CA Bar No. 316270)º

1016 16th Street NW, Suite 100  
Washington, DC 20036  
Phone: (202) 293-2828  
Facsimile: (202) 293-2849  

\* Pro hac vice *applications forthcoming*  
\*\* *Application for admission forthcoming*  
º *Not admitted in DC*.

**CERTIFICATE OF SERVICE**

    I certify that on this 25th day of October, 2019, I caused a copy of Plaintiffs' Opposition to Defendants Motion to Un-Relate and Reassign to be sent to all parties receiving CM/ECF notices in this case.

/s/ Terry Ao Minnis
Terry Ao Minnis
